UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOAH A. MESSING, | ) |
| | ) |
| Plaintiff | ) Civil Action No: 3:19cv1442 (AWT) |
| | ) |
| | ) |
| v. | ) July 13, 2019 |
| | ) |
| THE TOWN OF HAMDEN | ) |
| | ) Jury Trial Demanded |
| Defendant | ) |
| | ) |
| | ) |

SEP 13 2019 PM 1:32
FILED-USDC-CT-NEW HAVEN

**COMPLAINT FOR DAMAGES**

1. Plaintiff owns a home in Hamden, Connecticut that, because of Defendant's direct actions and decisions, becomes flooded on a regular basis. Defendant repaved a road—Deepwood Drive, just north of the border between Hamden and New Haven—in a manner that funneled thousands of gallons of water onto Plaintiff's property.

2. This flooding is documented by numerous videos and photos in Plaintiff's possession, by the testimony of the home's current and former residents, and by independent witnesses (including landscaping experts) who have attempted, without success, to reduce the flooding that Hamden has caused. One such expert stated that he had never seen a home that had so much water funneled onto it.

3. This flooding has lowered the home's value enormously. It has caused house-wide mold outbreaks. It has forced the Plaintiff to compensate tenants for ruined property, caused one tenant to terminate his lease prematurely, and forced the Plaintiff to spend

1

       more than *$25,000* to remediate the problems directly caused by the flooding that Defendant caused—without success.

4. Plaintiff has attempted to resolve the dispute without litigation: he or his representative contacted Defendant's engineering department at least five times to ask Defendant to add a drainage system or propose some other solution in order to end the flooding. That department acknowledged in October 2018 that there was a significant problem stemming from Defendant's engineering decisions, promised to reply to Plaintiff with a plan to end the flooding, and then ignored serial inquiries from Plaintiff for an update or action plan.

5. After one final attempt earlier this month to obtain a remedy without litigation—a request that also went ignored—Plaintiff asks this Court to compensate him for his damages.

6. Case law holds municipalities liable under the Takings Clause when they repave roads or make other engineering decisions that wind up flooding private property. Plaintiff requests a jury trial as to the amount of his damages (and to liability, if necessary, though Plaintiff expects to obtain summary judgment on the Defendant's liability).

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983, as the Supreme Court recently held in *Knick v Township of Scott, Pennsylvania* (No. 17-647). Supplemental jurisdiction over Plaintiff's state law claim (Count 3) rests on 28 U.S.C. § 1367.

8. Venue lies in this judicial district because Plaintiff, Defendant, and the property that was flooded all are located in Hamden, Connecticut.

## PARTIES

9. Plaintiff, Noah Messing, resides at 34 Deepwood Drive in Hamden, CT. He is the owner of an additional property on the same street—10 Deepwood Drive, also in Hamden—which is the subject of this lawsuit.

10. Defendant is the Town of Hamden, located in New Haven County, within the State of Connecticut. For purpose of this litigation the Defendant is located at 2750 Dixwell Avenue, Hamden, CT 06518 or such other place as the Town of Hamden may treat as its place of business.

## FACTUAL ALLEGATIONS

11. Deepwood Drive is a public street in the Town of Hamden that lies close to the boundary between Hamden and New Haven. Located across from Lake Whitney, Deepwood Drive winds up a steep hill.

12. Under approximately 2016, Deepwood Drive had a drainage ditch/conduit running alongside the paved road to ensure that water runoff would not flood the properties located closest to Whitney Avenue—at the bottom of the hill. Plaintiff does not know whether such drainage existed on the entire street, but it existed, on information and belief, at the bottom of the street, which (because of the simple fact that water flows downhill) is where flooding risks are greatest. The drainage system sufficed to prevent flooding at 10 Deepwood Drive, which is house that is closest to sea level along Deepwood Drive. Even aside from the drainage system, on information and

belief, Deepwood Drive was paved in a manner that prevent 10 Deepwood Drive from flooding.

13. Plaintiff is the owner of 10 Deepwood Drive.

14. In or around 2016, Defendant repaved Deepwood Drive.

15. In repaving the street, Hamden removed the drainage system that prevented 10 Deepwood Drive from becoming flooded during moderate or heavy rains. It also changed the angles/grading of the road in a manner that causes water to course down the hill, veering to the right to go down the downward-sloped driveway of 10 Deepwood Drive. Since the repaving, 10 Deepwood Drive floods when moderate or heavy rains occur.

16. Defendant knew or should have known that the manner in which it repaved the road guaranteed that 10 Deepwood Drive would flood. An employee from the Hamden Engineering Department admitted as much in a conversation with Plaintiff.

17. On information and belief, Hamden (by and through its employees or its agents), repaved Deepwood Drive without adding a drainage system in order to reduce the cost of the project—given that adding a new drainage system would have increased the cost of the overall project considerably.

18. Plaintiff purchased the home and all rights in early 2018, including (as the Supreme Court has held) claims under the Taking Clause of the U.S. Constitution that run with the property.

19. Plaintiff began renting out 10 Deepwood Drive soon after acquiring it, in the early part of 2018 (in winter). The tenants complained that the property flooded whenever heavy or moderate rains fell. This water runoff resulted in dangerous pools of ice

right outside the property that jeopardized tenants and their guests. This ice exposed Plaintiff to the risk of significant liability, though (fortuitously) no one slipped on the ice and became injured, to Plaintiff's knowledge.

20. The problem worsened as the humidity levels rose. The house, following heavy rains and as a direct cause of the flooding caused by Defendant, began to smell dank and moldy. Huge pools of water gathered at various places outside the property, often four or five inches deep. The water seeped into the ground around the house; on information and belief, water seeped into the house, damaging walls and weakening the house's foundation.

21. Plaintiff (through his part-time assistant or directly) contacted employees of Defendant, in the Town of Hamden's Engineering Department. They did not return phone calls.

22. The problem worsened. The house became infested by mold. The house reeked. The tenants' personal property became covered in mold. Thousands of dollars of property needed to be thrown away. One tenant terminated his lease, citing the mold as the reason for his decision. Plaintiff needed to reduce the rent of the other two tenants to prevent them from moving out. Plaintiff made a further reduction in rent to offset the damage to the tenants' property.

23. Plaintiff took numerous videos showing a stream of water—roughly a foot wide and a quarter-inch deep, racing down Deepwood Drive and curling onto his property and toward the house. One independent observer described this rapid flow as a "river."

24. In response to additional calls to Defendant's Engineering Department, two individuals from the Department finally came to inspect the property. They were

candid about the situation, acknowledging that the repaved road and its lack of a drainage system caused the flooding. They said that they would speak with colleagues who work for the Town of Hamden to propose a solution.

25. They did not contact Plaintiff ever again.

26. Over the course of ten months, their department did not respond to numerous calls by Plaintiff and his part-time personal assistant asking for an update and for the Defendant to propose a solution.

27. Plaintiff paid thousands of dollars to remediate the mold, between cleaning costs, testing for toxic mold, paying a contractor to build a temporary barrier to block the water, reducing rent of two tenants, losing the rent of one tenant, needing to install a $16,900 air conditioning system to handle the intense humidity caused by the flooding, and approximately $,5000 or so in landscaping costs to increase drainage on the property and to regrade dirt and walkways to cause water to move further from the house.

28. None of these actions has prevented the flooding. One landscaping specialist said that the grading completed by the Defendant was the "worst I've ever seen" and has agreed to testify that, in his professional opinion, the Defendant's actions are the direct cause of the flooding.

29. Plaintiff intends to show at trial that, as a result of the flooding that Defendant caused, 10 Deepwood Drive is approximately $150,000 less valuable than before Hamden repaved Deepwood Drive, and possibly more if the house proves unsellable because of the flooding and risk of mold. If toxic mold develops in the home, the economic harm to Plaintiff home may prove even more significant. Likewise, Plaintiff's

        damage will be far greater than $150,000 if expert evaluation concludes that the foundation is damaged.

30. Plaintiff spend dozens of hours troubleshooting this problem placating tenants, lining up contractors, researching toxic mold, paying an assistant to aid with this process, and otherwise spending time on a problem that Defendant created.

31. Municipalities are liable when they repave roads or make other engineering decisions that wind up flooding private property.

32. A property does not need to be permanently flooded to cause a taking of property: regularly recurring flooding constitutes a taking.

33. Plaintiff acknowledges that Defendant had the legal power, under principles of eminent domain, to flood his property *provided that* it paid fair compensation.

34. Plaintiff has received no compensation for the flooding caused by Defendant—neither fair nor otherwise.

35. All actions taken by the Town of Hamden were taken in the town's official capacity.

## CLAIM FOR RELIEF

**Count 1: Taking of Property Under the Fifth Amendment of the U.S. Constitution**

36. Paragraphs 1-34 are incorporated by reference.

37. Defendant engaged in a *per se* taking by taking actions that result in flooding Plaintiff's property at 10 Deepwood Drive whenever moderate or heavy rain falls in the immediate area.

38. Alternatively, Defendant completed a regulatory taking of Plaintiff's property through the same actions.

39. Plaintiff is entitled to and seeks fair compensation for the Defendant's physical taking of his property.

40. Plaintiff further seeks reimbursement of costs and compensation for his time.

### Count 2: 28 U.S.C. § 1983

41. Paragraphs 1-39 are incorporated by reference.

42. Defendant has violated Plaintiff's constitutional right to receive fair compensation for taking of Plaintiff's private property and constitutional privilege to enjoy his property without flooding *unless* fair compensation is paid.

43. Defendant acted under color of a state statute because it is empowered by the State of Connecticut to pave or repave roads and otherwise to administer the Town of Hamden and it chooses.

44. Defendant acted under color of an ordinance or official action. On information and belief, the Mayor of the Town of Hamden was personally involved in the decision to repave Deepwood Drive, and either he or his designee made decisions about *how* to repave the road and whether to add a drainage system.

45. On information and belief, Defendant acted under a custom and practice of repaving municipal roads in a manner that does not properly protect homes toward the bottom of hills from flooding.

46. Plaintiff is a citizen of the United States.

### Count 3: Connecticut General Statute 12-119

47. Paragraphs 1-45 are incorporated by reference.

48. Defendant is in violation of C.G.S. 12-119 by materially altering the value of 10 Deepwood Drive in a manner that makes the rate of taxation manifestly excessive.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. Damages for the reduction in value to his property

b. Reimbursement for the expenses incurred remediating the flooding (including rent reductions)

c. Compensation for lost rent from the tenant who ended his lease

d. Compensation for the value of repairing any structural elements of the house in question, including its foundation, as appropriate.

e. Compensation for his time and personnel costs in responding to the flooding that Defendant caused.

f. Declaratory judgment that, under C.G.S. Sec. 12-119, the property taxes on 10 Deepwood Drive must be reduced to an appropriate level that actually matches the new value of the property rather than current manifestly excessive level.

I declare, under penalty of perjury, that all of the above facts are, to the best of my knowledge, true and correct.

September 13, 2019                                                                 Plaintiff

By: _____
Noah A. Messing
127 Wall St.
New Haven, CT 06511
Tel: (203) 500-6293
Email: noah.messing@yale.edu
Representing himself *pro se*