UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOAH A. MESSING | CIVIL ACTION NO. 3:19-CV-1442-AWT |
| V. | |
| TOWN OF HAMDEN | |

JAN 21 2020 PM 1:39
FILED-USDC-CT-NEW HAVEN

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant has moved to dismiss the Complaint in this action. Plaintiff respectfully requests that the Court deny Defendant's motion as to Counts 1 (Takings Clause) and 3 ("manifestly excessive" taxation under Connecticut General Statute § 12-119), for the reasons discusses below. Plaintiff does not oppose dismissal, without prejudice, of Count 2 (liability under 42 U.S.C. § 1983 and *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)).

**PRELIMINARY STATEMENT**

As described in the Complaint, plaintiff owns a house in Hamden, Connecticut. The house sits at the base of a hill. Rainwater flooded plaintiff's property—badly, and many times— and the Defendant caused the flooding. Specifically, the Defendant, a town in Connecticut, both removed a drainage system that protected the home and repaved the adjacent road in a manner

that funneled water onto the property. As noted in the Complaint, multiple witnesses will testify that:

- no drainage system remained after the Town altered the road,
- nearly all of the floodwater came from the public road that Defendant repaved and regraded to funnel water on Plaintiff's property,
- the flooding on the property was terrible and occurred repeatedly, and
- the home experienced significant, negative effects (damage, mold) from the flooding.

Plaintiff contacted the Town's engineering department multiple times to resolve the problem without litigation. Time and again, he contacted Defendant to propose a modest, reasonable solution to the flooding which, in the words of one witness who specializes in water damage at homes, is the "worst I've ever seen." Compl. ¶ 28 (quoting mold specialist who evaluated plaintiff's house). Defendant eventually sent two town employees to assess the problem; one of those individuals admitted that the Town had botched the paving job and caused the flooding. Compl. ¶¶ 16, 24. Those two Town employees told Plaintiff that they would speak with other two officials to propose a solution. Instead, neither they nor other town officials responded to any of Plaintiff's subsequent efforts—repeated calls over the following ten months—to get a response or fix the problem. Compl. ¶ 26.

This Opposition discusses the reasons that two of plaintiff's three claims may proceed. In short:

**Count 1.** Supreme Court case law hold that the Defendant's conduct engaged in an uncompensated taking of property under the Fifth Amendment's Takings Clause. *Arkansas Game & Fish Comm'n v. U.S*, 133 S. Ct. 511 (2012). Defendant's efforts to disregard controlling

authority and, instead, apply state-law principles of negligence make sense: they will lose, decisively, if and when Plaintiff establishes the facts alleged in the Complaint. The out-of-date, out-of-circuit opinions on which Defendant rests its attempt to evade liability conflict with controlling precedent.

**Count 3.** Defendant's suggestion that this Court lacks the power to assess whether the Town violated a state law that prohibits grossly excessive taxation is wrong. Under normal circumstances, the Town would be correct. Federal law, namely the Tax Injunction Act, usually bars a district court from reviewing the appropriateness of a municipal tax. 26 U.S.C. § 7421. But that statute, as both the Second Circuit and this Court have recognized, applies only if the state provides for a remedy in state court. Here, the statute—based on its plain terms—deprives Plaintiff of a remedy other than in this Court. Thus, the Tax Injunction Act does not apply and this Court has jurisdiction to hear plaintiff's claim under its supplemental jurisdiction. 28 U.S.C. § 1367.

**Count 2.** After a careful review of Second Circuit case law, Plaintiff consents to the dismissal without prejudice of his claim against the Town under 42 U.S.C. § 1983 and *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)).

After more than two years of Plaintiff being unable to obtain any voluntary resolution from Defendant, Plaintiff respectfully asks the Court to permit his case to move forward, with the expectation that the parties will quickly and amicably solve the problem described in the Complaint.

## STATEMENT OF THE CASE

Plaintiff owns a home in the Town of Hamden, Connecticut. Compl. ¶ 13. The home lies near the corner of two public roads in Hamden, one of which lies at the bottom of a hill. Compl.

¶ 11. The Town repaved this road, called Deepwood Drive. Compl. ¶¶ 15-16. When the Town did so, it "removed the drainage system that prevented 10 Deepwood Drive from becoming flooded during moderate or heavy rains." Compl. ¶ 15. At the same time, the Town also "changed the angles/grading of the road in a manner that causes water to course down the hill, veering to the right to go down the downward-sloped driveway of 10 Deepwood Drive." *Id.* As a direct result of those two actions by the Town—removing the barrier, regrading the road—"10 Deepwood Drive floods when moderate or heavy rains occur." *Id.* at ¶¶ 20, 22, 27.

As a result of the flooding, the house became damaged (*id.* at ¶ 20) and the house's interior became covered in mold, causing one tenant to terminate his lease. *Id.* at ¶¶ 22, 27. The house reeked because of the mold. *Id.* at ¶ 22. To avoid losing additional tenants, Plaintiff reduced the rent of the remaining renters significantly, costing him thousands of dollars. *Id.* at ¶¶ 22, 27. Plaintiff has spent thousands of dollars trying to fix the problem, but the flooding continues. *Id.* at ¶ 27 (discussing plaintiff's expenditures); *id.* at ¶ 28 (noting that the problems continue to this day).

Plaintiff carefully documented the flooding. He has video recordings, photographs, independent testimony, and records that memorialize his damages and the extent of the problem. *Id.* at ¶¶ 23, 28. One independent witness who specializes in mold abatement will testify (and states in a video recording in Plaintiff's possession), that the damage to Plaintiff's home is the "worst I've ever seen." *Id.* at ¶ 28. He will testify that the "Defendant's actions are the direct cause of the flooding." *Id.* (quoting Complaint and characterizing what the witness will state at trial). Another independent witness described the flow of water from the road to the home as a "river." Compl. ¶ 23.

For roughly two years, Plaintiff asked the Town to abate the flooding problems that it had created. *Id.* at ¶¶ 21, 24, 25, 26. After months of un-returned phone calls, two Town employees finally came to look at the house. *Id.* at ¶ 24. One "acknowledge[ed] that the repaved road and its lack of a drainage system caused the flooding." *Id.* at ¶ 24.

This employee and his colleague represented to Plaintiff that they would speak with colleagues who work for the Town of Hamden to propose a solution. *Id.* Instead, they failed to respond to any of Plaintiff's subsequent calls over the following ten months. *Id.* at ¶¶ 25-26.

Plaintiff finally, reluctantly, filed this lawsuit to obtain fair compensation—or, more likely, a fair and agreeable negotiated solution. Compl. ¶¶ 4-5. The Complaint alleges that the flooding on Plaintiff's property—which the Town caused—had several effects: the flooding (i) permanently damaged Plaintiff's home, (*id.* at ¶ 29), (ii) caused Plaintiff to lose significant rental income (*id.* at ¶ 27), and (iii) forced Plaintiff to spend substantial amounts of money (more than $21,000) to try to prevent further damage from the flooding and to abate the problems that had already occurred (*id.* at ¶¶ 27, 30).

## ARGUMENT

**I.   The Complaint alleges facts that, under controlling precedent, are a *per se* taking of property, requiring the Town to compensate Plaintiff.**

For more than a century, the Supreme Court has made it clear that governments are liable when they flood private property. *U.S v. Cress*, 243 U.S. 316 (1917). That remains the law today, as both the Supreme Court and the Court that most frequently hears Takings Clause cases have recognized. *Arkansas Game & Fish Comm'n v. U.S*, 568 U.S. 23 (2012); *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, No. 17-9001L, 2019 WL 6873696, at *22 (Fed. Cl. Dec. 17, 2019) ("[I]ntermittent inundation of land, as contrasted to continuous overflow, can give rise to a viable permanent taking claim.").

When a government actor knowingly floods private property, "defendant's actions may be viewed not as an 'isolated invasion,' but rather as reserving a flowage easement over the affected property." *Quebedeaux v. U.S*, 112 Fed. Cl. 317, 323 (2013). The Complaint asserts that flooding occurred many times. See Compl. ¶ 19 ("[T]he property flooded whenever heavy or moderate rains fell."); Compl. ¶ 23 ("Plaintiff took *numerous* videos showing a stream of water") (emphasis added). That properly pleads a taking of property by intermittent flooding. *Barnes v. United States*, 538 F.2d 865, 870 (Ct. Cl. 1976) ("[P]roperty may be taken by the invasion of water where subjected to intermittent, but inevitably recurring, inundation due to authorized Government action") (citing numerous cases); *see also In re Upstream Addicks*, at *22 (reiterating this principle in an opinion issued last month).

Nor does the flooding need to be permanent. As the Supreme Court held several Terms ago, "government-induced flooding can constitute a taking even if it is temporary in duration." *Arkansas Game & Fish Comm'n v. U.S.*, 133 S. Ct. 511, 521 (2012).

The question of whether a particular amount and frequency of flooding is serious enough to be a taking of property is a fact-specific inquiry. *See generally id.* at 521. As a result, dismissal is an improper remedy in most instances. That conclusion is especially true when the pleaded facts are as strong as those in this litigation. *E.g.*, Compl. ¶ 23 (noting that one observer referred to the water flow as resembling a "river");[1] *id.* at ¶ 28 (noting that one expert described the flooding as the "worst I've ever seen). *Id.* The facts alleged in the Complaint suffice to foreclose pre-discovery dismissal.

---

[1] Plaintiff does not intend to suggest that the flooding *literally* resembled a river, though this quote is accurate. *See also* Compl. ¶ 23 (estimating that the typical, nonstop flow of water onto plaintiff's property during any moderate rainfall was "roughly a foot wide and a quarter-inch deep"). Collectively, this resulted in hundreds or thousands of gallons flooding the home *each* time that rain fell for the past two years.

None of the authorities cited by the Town warrant a contrary result. *Every* authority that Defendant cites pre-dates the Supreme Court's holding in *Arkansas Game*. Thus, the Town's authorities—none of which were issued by the Second Circuit or this Court—are non-controlling. And because they conflict with controlling precedent (i.e., *Arkansas Game*) they are not even persuasive. They simply misstate the law.

Moreover, the Town's efforts to distinguish *Arkansas Game* fail both legally and factually. The Town argues that the Town did not receive a benefit and that, as a result, Plaintiff should suffer the loss that the Town caused. Putting aside the unfairness of such an outcome, *Arkansas Game* does not require the "taker" of property to benefit: the Constitution contains a *Takings* Clause not an *Anti-Benefiting* Clause. The Supreme Court has long settled this issue. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (holding a municipality liable under the Takings Clause for placing a physical object on private property even though the city did not benefit). Thus, defendant is wrong as a legal matter.

The defendant is also wrong as a factual matter. To start, the Complaint pleads facts sufficient to conclude that the Town *did* benefit. Compl. ¶ 17 (noting that the Town "repaved Deepwood Drive without adding a drainage system in order to reduce the cost of the project"). Also, the Complaint can fairly be read to suggest that the Town refused to fix its mistake in order to avoid spending money, creating another benefit to the town. *Id.* at ¶¶ 24-26 (noting that one of the Town's employees admitted that the Town was responsible for the flooding but that the Town evaded Plaintiff's repeated efforts to repair the problematic road). Moreover, discovery is needed to discern whether the Town benefited. In particular, flooding plaintiff's property avoided having thousands of gallons of water flow onto a busy road, Whitney Avenue, that lies at the bottom of the hill where plaintiff's house is located. Discovery may show that the Town

flooded Plaintiff's land and home to avoid traffic problems or to achieve other goals. So Plaintiff does not need to show that the Town benefited, and the Town cannot show at this stage that it failed to benefit.

Controlling precedent thus requires denying the motion to dismiss as to Count 1: if Plaintiff establishes most or all of the facts in the Complaint, the Town is liable, under the Takings Clause, for flooding his property.

**II.     This Court has jurisdiction to review Plaintiff's claim for equitable relief based on the fact that, as a result of the Town's actions, Plaintiffs home is taxed at a manifestly excessive rate.**

Plaintiff's home dropped in value considerably because the Town flooded and damaged 10 Deepwood Drive, the home at question in this lawsuit. The drop in value was, as the Complaint alleges, significant enough that the home is now taxed at a manifestly excessive rate. Compl. ¶¶ 29, 36-40. A tax must be reduced, under Connecticut law, if it is "manifestly excessive." C.G.S. 12-119.

Normally, federal law would deprive this Court of jurisdiction to hear this sort of claim. 28 U.S.C. § 1341. But not here. Under federal law, the Tax Injunction Act *usually* prohibits an aggrieved taxpayer from asking a federal district court to alter a tax rate: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law *where a plain, speedy and efficient remedy may be had in the courts of such State*." 28 U.S.C. § 1341 (emphasis added).

Thus, before the Tax Injunction Act may be invoked to bar district courts from asserting subject-matter jurisdiction, two conditions must be satisfied—and the Town is unable to fulfill the second showing. First, the assessment or surcharge in question must constitute a tax. *Hattem*

8

*v. Schwarzenegger*, 449 F.3d 423, 427 (2d Cir. 2006). On this point, the Town has the better argument: plaintiff seeks to alter the appraisal and assessment of his house.

But the second element bars dismissal. Plaintiff lacks a "plain, speedy and efficient remedy in state court." 28 U.S.C. § 1341. As the Second Circuit has noted, the Tax Injunction Act means what it says: dismissal is improper under Rule 12(b)(1) if the taxpayer lacks a "plain, speedy and efficient" state court remedy. *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir.1989).

Here, state law bars plaintiff from its doors. The state statute in question, C.G.S. 12-119, *normally* allows a party that is grossly overtaxed to file an action in state court. But that provision expressly limits these *state-court* actions to cases filed within one year of the tax assessment. *Id.* (providing that a party may "make application for relief to the superior court for the judicial district in which such town or city is situated" but that "[s]uch application may [only] be made within one year from the date as of which the property was last evaluated"). But the statute expressly contemplates that *other* courts will hear claims arising under this statute after the one-year period has passed—and imposes no time limit on such claims. Specifically, the statute notes that a taxpayer "may, ***in addition to the other remedies provided by law***, make application for relief to the superior court . . . ." *Id.* (emphasis added).

Reviewing the Town's actions in this Court is one of the other remedies "provided by law." Here's why: First, federal law permits courts to hear state-law claims pursuant to supplemental jurisdiction. 28 U.S.C. § 1367. Second, the Tax Injunction Act creates an exception to the assertion of supplemental jurisdiction. 28 U.S.C. § 1341. Finally, however, that exception preventing supplemental jurisdiction does not apply here because Connecticut state courts decline to hear cases like Plaintiff's that arise more than a year after the valuation. C.G.S. 12-

119. Thus, because no review is available in state court—much less "a plain, speedy and efficient remedy"—no obstacle exists to reviewing plaintiff's state-law claim under 28 U.S.C. § 1367.

The timeline confirms this analysis. The Town completed a revaluation on October 1, 2015. *Martino v. Town of Hamden*, No. NNHCV166063327, 2018 WL 4558209, at *1 (Conn. Super. Ct. Aug. 31, 2018) (referring to the "valuation assessment . . . conducted by the town of Hamden on October 1, 2015").[2]

Just 33 days later, Hamden crushed the value of Plaintiff's home. Research by the Plaintiff has revealed that the exact date of the repaving that flooded his property was November 4, 2015. (The Complaint noted that Hamden repaved Deepwood Drive "[i]n or around 2016." Compl. ¶ 14. The repaving that lowered the value of plaintiff's home occurred immediately after the 30-day period allowed by state law to challenge a property tax assessment. C.G.S. § 12-117 ([A]ny owner may appeal such increase to the board of assessment appeals not later than thirty days after the date of such notice"). Thus, no challenge to the appraisal could have been raised under the normal process for challenging a property assessment.

---

[2] Valuation records are public records and may be considered under the doctrine of judicial notice. Here is a screenshot of the valuation record prepared by Hamden's agent (Vision Appraisal) on October 1, 2015:

| Appraisal | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2018 | $189,200 | $295,300 | $484,500 |
| 2017 | $189,200 | $295,300 | $484,500 |
| 2016 | $189,200 | $295,300 | $484,500 |

| Assessment | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2018 | $132,440 | $206,710 | $339,150 |
| 2017 | $132,440 | $206,710 | $339,150 |
| 2016 | $132,440 | $206,710 | $339,150 |

(c) 2020 Vision Government Solutions, Inc. All rights reserved

Nor could Plaintiff have filed suit under the alternative statute, C.G.S. § 12-119. As noted above, C.G.S. 12-119 permits challenges when properties are taxed at a "manifestly excessive" rate. But nothing in the record or Complaint suggests that the plaintiff's house had been substantially devalued *then*. To the contrary, the Complaint pleads that the harm that drove down the value of Plaintiff's home occurred over time. Compl. ¶ 29 (noting that the *cumulative* harm since the flooding began caused a reduction in value of approximately $150,000). At trial, plaintiff will show that house, which the Town valued at $484,500, failed to sell for even $325,000—but not until well after the one-year deadline for filing in state court had passed.

Plaintiff has searched diligently, without success, for any Connecticut cases suggesting that a state court would have opened its doors to him in circumstances such as there, wherein a property's value craters more than one year after the revaluation. No such case appears to exist, and Defendant has cited no such authority. Because defendant cannot fulfil the second element of the Second Circuit's test under *Long Island Lighting Co.*, dismissal is improper. Plaintiff's claim did not accrue under C.G.C. § 12-119 until after the window for filing *in state court* had passed.[3] As a result, this Court is the *only* proper forum for Plaintiff's claim under C.G.S. § 12-119, and the Tax Injunction Act is inapplicable. Count 3 of the Complaint should not be dismissed.

### III.   Plaintiff's claim that the Town has a pattern and practice of providing inadequate drainage, may properly be dismissed without prejudice.

After carefully reviewing the Defendant's authorities relating to Plaintiff's second Count, which asserted a claim for damages under 42 U.S.C. § 1983, Plaintiff acknowledges that this

---

[3] Plaintiff has acquired all legal claims related to C.G.S. § 12-119 from the prior owner (for the period before plaintiff bought the home) and has suffered his own significant injuries since then. Compl. ¶ 18 ("Plaintiff purchased the home and all rights in early 2018, including . . . claims under the Taking Clause").

claim may property be dismissed without prejudice. *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545–46 (2d Cir. 2009) ("The allegations that [defendant] acted pursuant to a "policy," without any facts suggesting the policy's existence, are plainly insufficient.") Dismissing *without* prejudice is appropriate so that Plaintiff may, if he so chooses, conduct further research into the Town's policies and practices in order to meet the pleading standards required within the Second Circuit.

                                Respectfully submitted,

                                NOAH A. MESSING, PLAINTIFF

                                */s/ Noah A. Messing*
                                Noah A. Messing, *pro se*
                                127 Wall St.
                                Office K22
                                New Haven, CT 06510
                                (203) 500-6293
                                noah.messing@yale.edu

## CERTIFICATE OF SERVICE

  I hereby certify that I served a copy of the foregoing by electronic mail to counsel for the Defendant: Scott Ouellette at SOuellette@wwolaw.com and James Williams at JWilliams@wwolaw.com, on January 17, 2020 at approximately 5:45 PM.

  Because plaintiff is *pro se* he is unable to file this Opposition today because he lacks ECF filing privileges in this District Court, and the Office of the Clerk closed at 5:00 PM on January 17, 2020. Plaintiff will file this brief on Tuesday morning, January 21, 2020—as soon as the Office of the Clerk reopens after Martin Luther King Jr. Day. Notice of this filing will then be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF System.

January 17, 2020                     */s/ Noah A. Messing*
                                   Noah A. Messing