```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

-------------------------------- x
NOAH A. MESSING,                 :
                                 :
          Plaintiff,             :
                                 :
v.                               :    Civil No. 3:19-cv-1442(AWT)
                                 :
TOWN OF HAMDEN,                  :
                                 :
          Defendant.             :
-------------------------------- x
```

## RULING ON MOTION TO DISMISS

For the reasons set forth below, the defendant's motion to dismiss is being granted in part and denied in part. Count I remains.

### I.   FACTUAL ALLEGATIONS

For the purposes of this motion, the court takes as true the following allegations in the complaint. Plaintiff Noah A. Messing owns the property at 10 Deepwood Drive (the "Property") in the Town of Hamden (the "Town"). He purchased the Property in 2018. The Property sits at the bottom of a hilly road. Until 2016, Deepwood Drive had a drainage ditch or conduit running alongside the road which ensured that water runoff did not flood properties. In 2016 the Town repaved Deepwood Drive. In the process, it removed the drainage system and changed the grading of the road, which resulted in water flowing downhill and then veering down the driveway of the Property. Messing

alleges that the Town knew or should have known that the way it repaved the road guaranteed that the Property would flood. Yet, to keep down the cost of the project, it chose not to add a drainage system.

Soon after purchasing the Property Messing leased it, and his tenants reported that the Property flooded whenever heavy or moderate rains fell. This would create pools of ice in the colder months. When humidity levels rose, the interior of the house on the Property would smell dank and moldy. Water seeped into the ground around the house, and then seeped into the house and damaged walls and weakened the house's foundation. The house became infested by mold. Messing alleges that the Property is worth at least $150,000 less than it was before the Town repaved Deepwood Drive.

Messing contacted the Town's engineering department, which sent two employees to inspect the Property. Those employees acknowledged that the grading of repaved road and its lack of a drainage system cause the flooding. They stated that they would speak to their colleagues and propose a solution. They never contacted Messing again.

## II.  LEGAL STANDARD

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to

adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas Telecomm., 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). The party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurechione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted).

However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 568. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

**III. DISCUSSION**

    **A.    Count I: Fifth Amendment Taking of Property**

The Fifth Amendment of the U.S. Constitution states in pertinent part: "nor shall private property be taken for public use, without just compensation." U.S. Const., amend. V. The Takings Clause is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960). The Takings Clause is applicable to the states and local governments. See Knick v. Twp. of Scott, 139 S. Ct. 2162, 2170 (2019) ("If a local government takes private property without paying for it, that government has violated the Fifth Amendment.").

"The Supreme Court has recognized two branches of Takings Clause cases: physical takings and regulatory takings." 1256 Hertel Ave. Assocs., LLC v. Calloway, 761 F.3d 252, 263 (2d Cir. 2014). "A physical taking occurs when there is either a condemnation or a physical appropriation of property." Id. But "no magic formula enables a court to judge, in every case, whether a given government interference with property is a taking." Ark. Game & Fish Comm'n v. United States, 568 U.S. 23, 31 (2012).

In 2012, the Supreme Court held that "government-induced flooding temporary in duration gains no automatic exemption from

Takings Clause inspection." Id. at 38 (emphasis added). But not all temporary government-induced flooding constitutes a taking. Rather, the Takings Clause inspection is a case-specific factual inquiry. "When regulation or temporary physical invasion by government interferes with private property . . . time is . . . a factor in determining the existence vel non of a compensable taking." Id. "Also relevant to the takings inquiry is the degree to which the invasion is intended or is the foreseeable result of authorized government action." Id. at 39. "So, too, are the character of the land at issue and the owner's 'reasonable investment-backed expectations' regarding the land's use." Id. (quoting Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001)). "Severity of the interference figures in the calculus as well." Id.

First, the Town contends that a taking did not occur here because "a taking only results when the government intends to invade a protected property interest or the asserted invasion is the 'direct, natural, or probable result' of an authorized activity and not the incidental or consequential injury inflicted by the action." (Def.'s Memo. Supp. Def.'s Mot. to Dismiss Pl.'s Compl. ("Def.'s Memo.") 6 (quoting Columbia Basin Orchard v. United States, 132 F. Supp. 707, 709 (Ct. Cl. 1955)).) Thus, the Town argues that Count I should be dismissed because "there is no allegation . . . that the Town . . .

intended to invade [the Property] with surface water runoff." (Id. at 7.)

But in response to the government's argument in Arkansas Game & Fish Commission that the flooding at issue was not foreseeable, the Federal Circuit, on remand, stated: "In order for a taking to occur, it is not necessary that the government intend to invade the property owner's rights, as long as the invasion that occurred was 'the foreseeable or predictable result' of the government's actions." Ark. Game & Fish Comm'n v. United States, 736 F.3d 1364, 1372 (Fed. Cir. 2013) (Ark. Game & Fish Comm'n II). As the Supreme Court stated, relevant to the takings inquiry is "the degree to which the invasion is intended or is the foreseeable result of authorized government action." Ark. Game & Fish Comm'n, 568 U.S. at 39 (emphasis added). Thus, the absence of an allegation that the Town intended to invade the Property is not dispositive.

Second, the Town argues that Count I fails because there is "no probable claim that the repaving of Deepwood Drive 'guaranteed' that 10 Deepwood Drive would flood [as] the . . . 'direct, natural, or probable result' of the Town's public works project." (Def.'s Memo. 7.)

Although "takings liability does not arise from government inaction or failure to act," Ridge Line, Inc. v. United States, 346 F.3d 1346, 1356 (Fed. Cir. 2003), the causal link need not

-7-

be "guaranteed" as the Town suggests.  Rather, where government action "initiated a series of events, all . . . in their natural order, by which the landowner was deprived of the beneficial use of portions of its land, a taking" may be found.  Id.  When that natural series of events was foreseeable, a Takings Clause claim may lie.

> For example, in Arkansas Game, the Supreme Court found a temporary taking claim could be based on affirmative actions by the government in releasing water from a government constructed and operated dam that caused downstream flooding on the plaintiff's property.  In Ridge Line, the United States Postal Service built a facility that increased storm water runoff onto the plaintiff's property.  We held that this government action may form the basis for an inverse condemnation claim.

St. Bernard Par. Gov't v. United States, 887 F.3d 1354, 1361 (Fed. Cir. 2018) (first citing Ark. Game & Fish Comm'n, 568 U.S. at 27-28; then citing Ridge Line, 346 F.3d at 1351), cert. denied, 139 S. Ct. 796 (2019).  In Ridge Line, there was no allegation that the construction of the Postal Service building was intended to cause increased storm water runoff on the plaintiff's property.  Rather, the increased storm water runoff and resulting flooding of the plaintiff's property was merely a consequence of the construction of the facility.  Yet the Federal Circuit held that a takings claim could lie and remanded the case for the fact-intensive analysis of a Takings Clause claim.

Here, Messing has plausibly alleged that the flooding of the Property was a "foreseeable result of [the] authorized government action," Ark. Game & Fish Comm'n, 568 U.S. at 39--i.e., the repaving of Deepwood Drive with improper grading and without a drainage system.  Messing has alleged that the Town's inspectors admitted that the way in which Deepwood Drive was repaved caused the flooding of the Property.  He has also alleged that other professionals have stated that it is apparent to them that the reason for the flooding is the repaving of Deepwood Drive without a drainage system and poor grading.  These facts support a reasonable inference that the flooding of the Property is a foreseeable direct, natural, or probable result of the Town's decisions about the repaving project.

Third, the Town argues that there was no taking here because it received no benefit from the appropriation.  "Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owners right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value." Ridge Line, 346 F.3d at 1356.  "[W]hen the character of the governmental action is a permanent physical occupation of property, [the Supreme Court's] cases uniformly have found a taking to the extent of the occupation, without

regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 434–35 (1982) (citation and internal quotation marks omitted). But "in cases of physical invasion short of permanent appropriation, the fact that the government itself commits an invasion from which it directly benefits is one relevant factor in determining whether a taking has occurred." Id. at 432 n.9.

Here, Messing has plausibly alleged a benefit to the government. Messing alleges that the decision not to include a drainage system in the Deepwood Drive repaving project saved the Town a significant sum of money. Thus, Messing has plausibly alleged that the Town benefits from the appropriation of his property in that it does not have to construct a drainage system on its own property, at its own expense.

Therefore, the motion to dismiss is being denied as to Count I.

### B. Count II: Monell Claim

Messing consents to dismissal of Count II without prejudice. So Count II will be dismissed without prejudice.

### C. Count III: Conn. Gen. Stat. § 12-119 Excessive-Taxation Claim

The Tax Injunction Act ("TIA") provides that "[t]he district courts shall not enjoin, suspend or restrain the

assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.  The TIA is "rooted in principles of federalism and in recognition of a state's need to administer its own fiscal operations." Bernard v. Vill. of Spring Valley, 30 F.3d 294, 297 (2d Cir. 1994).  "[T]he principal purpose of the Tax Injunction Act [is] to limit drastically federal-court interference with the assessment and collection of state taxes." California v. Grace Brethren Church, 457 U.S. 393, 408–09 (1982) (internal citation and quotation marks omitted).  "[F]ederal courts are precluded from exercising jurisdiction over challenges to state tax assessments, regardless of the type of relief sought." Bernard, 30 F.3d at 297.

A "plain, speedy and efficient remedy" exists where the available state-court procedures satisfy certain "minimal procedural criteria," including a "full hearing and judicial determination at which [the taxpayer] may raise any and all constitutional objections to the tax." Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 514 (1981).  "The availability of typical 'state administrative and judicial procedures' through which a party can ultimately challenge the validity of the tax in court satisfies these criteria." Entergy Nuclear Vt. Yankee, LLC v. Shumlin, 737 F.3d 228, 234 (2d Cir. 2013).

The applicable Connecticut statute provides that an action challenging an assessment on property is to be brought in Connecticut Superior Court within one year from the date of the assessment.  Section 12-119 provides:

> When it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property . . . . [the taxpayer] may, in addition to the other remedies provided by law, make application for relief to the superior court . . . .  Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation.

Conn. Gen. Stat. § 12-119.

Messing argues that there was no plain, speedy, and efficient remedy available to him because he did not own the Property when it was last evaluated.  He states that the Property was last evaluated on October 1, 2015.  Thus, he argues, because he did not purchase the Property until 2018, he could not have brought suit by October 1, 2016 and section 12-119 was not available to him.

But as the Town explains, "the date as of which the property was last evaluated for purposes of taxation" referred to in section 12-119 is the date of assessment, which occurs yearly on October 1.  Connecticut's "appellate courts uniformly have held that 'the date as of which the property was last evaluated for purposes of taxation' refers to the assessment

-12-

date." Cornelius v. Arnold, 168 Conn. App. 703, 712 (2016) (quoting Conn. Gen. Stat. § 12-119). Thus, a remedy pursuant to section 12-119 was available to Messing each year. However, he has failed to pursue it.

Messing's failure to timely utilize the remedy set forth in section 12-119 is not relevant to the TIA analysis. "[T]he statute of limitations is irrelevant with respect to the question of the adequacy of a state remedy for purposes of the Act and the principles of comity." Madlin v. Orange & Rockland Utils. Corp., 21 F. Supp. 2d 394, 398 n.1 (S.D.N.Y. 1998). "The 'taxpayer's failure to win in state court or to use the remedy properly does not negate the existence of the remedy.'" Fisher v. Haber, No. 89 CIV. 2018 (RJW), 1989 WL 645694, at *5 (S.D.N.Y. Oct. 17, 1989) (quoting Long Island Lighting Co. v. Town of Brookhaven, 703 F. Supp. 241, 245 (E.D.N.Y. 1989)). "A number of courts have squarely faced the issue of whether a 'plain, speedy and efficient remedy' which has been allowed to lapse satisfies the Tax Injunction Act. These courts have unanimously concluded that failure to utilize a remedy does not render that remedy insufficient under § 1341." Aluminum Co. of Am. v. Dep't of Treasury, 522 F.2d 1120, 1125 (6th Cir. 1975) (collecting cases).[1]

---

[1] Accord Burris v. Little Rock, 941 F.2d 717, 721 n.4 (8th Cir. 1991) ("[A] taxpayer's failure to take advantage of a

> The expiration of time in which the state suit might have been brought does not result in the destruction of the plain and simple remedy principle specified in the [Tax Injunction Act]. To hold otherwise would allow any disgruntled taxpayer to simply wait until the statute of limitations had run in the state courts and then bring suit in the federal court.

423 S. Salina St., Inc. v. Syracuse, 566 F. Supp. 484, 492 (N.D.N.Y. 1983) (quoting Henry v. Metro. Dade Cty., 329 F.2d 780, 781 (5th Cir. 1964)).

Thus, the court concludes that an adequate state remedy was or is available to Messing, and the TIA thus divests the court of subject-matter jurisdiction over Count III. So Count III will be dismissed.

**IV. CONCLUSION**

For the reasons set forth above, the Motion to Dismiss (ECF No. 15) is hereby GRANTED in part and DENIED in part. Count II is dismissed without prejudice, and Count III is dismissed with prejudice.

---

remedy does not render it insufficient."); Sacks Bros. Loan Co. v. Cunningham, 578 F.2d 172, 175 (7th Cir. 1978) ("[T]he application of Section 1341 depends on whether a state remedy was at some time available to the taxpayer and the taxpayer's failure to . . . use the remedy properly does not negate the existence of the remedy."); Sappington v. Pennsylvania, 535 F. Supp. 429, 431 (E.D. Pa. 1982) ("The test under the Tax Injunction Act is whether a state remedy ever existed for the plaintiffs. The fact that it is not available under state law because of the passage of time does not render the remedy insufficient.").

-15-

It is so ordered.

Dated this 13th day of May 2020, at Hartford, Connecticut.

                                      /s/AWT
                              Alvin W. Thompson
                           United States District Judge